Kuykendall v. TDHR 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-005-CV

     TERESA KUYKENDALL,
                                                                                              Appellant
     v.

     TEXAS DEPARTMENT OF HUMAN SERVICES,
                                                                                              Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 338-90
                                                                                                    

O P I N I O N
                                                                                                    

      The Texas Department of Human Services instituted this action against Teresa Kuykendall and
Gary Wayne Kuykendall to terminate their parental rights with regard to their children, S.M. and
L.F., under section 15.02 of the Texas Family Code.


 In a non-jury trial, the court found (1) that
Teresa and Gary Kuykendall "knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endanger the physical or emotional well-being of the children,"



and (2) that they "engaged in conduct or knowingly placed the children with persons who engaged
in conduct which endangers the physical or emotional well-being of the children."


 The court
further found that termination of the parent-child relationship was in the best interest of the
children. As a result of these findings, the court entered a decree of termination from which
Teresa Kuykendall appeals. Gary Kuykendall has not appealed the decree of termination.
      In two points of error, Teresa Kuykendall attacks the sufficiency of the evidence to support
the trial court's findings. The "clear and convincing evidence" standard of proof is required in
all proceedings to involuntarily terminate the parent-child relationship.


 The Supreme Court
defined the standard as "that measure or degree of proof which will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."


 
This is an intermediate standard, "falling between the preponderance standard of ordinary civil
proceedings and the reasonable doubt standard of criminal proceedings."


 Because the Supreme
Court has held that termination proceedings must be "strictly scrutinized" by the appellate courts,
we will apply an intermediate standard of appellate review. When the trier of fact is required to
make a finding by clear and convincing evidence, the court of appeals will only sustain a point of
error alleging insufficient evidence if the trier of fact could not reasonably find the existence of
the fact to be established by clear and convincing evidence.



      The record in this case reveals that S.M. has a serious problem with asthma and that during
four asthmatic attacks her condition was so critical that she had to be taken to the Children's
Medical Center in Dallas for treatment. Gayle Spagnola, a clinical social worker at the Children's
Medical Center, met with the family during an asthmatic crisis. Spagnola testified that she was
very concerned about Teresa's attitude toward the asthma. According to Spagnola, Teresa told
her that there had been times when she had failed to get all of S.M.'s prescriptions filled, and
some times when she did not get any of them filled. Spagnola also testified that she was concerned
about Teresa's personal hygiene and cleanliness. She testified that:
There was a body odor that was real noticeable when I entered the hospital room. 
The mother was very unclean, was not wearing shoes, and her feet, on the tops as well
as on the bottoms, were very dirty. Her hair was unclean, her hands and arms were not
clean. The odor was very, very noticeable in the room.

      Spagnola attempted to arrange follow-up treatment for S.M. in Corsicana but no doctor or
clinic that she contacted would agree to treat the child because of past history with the family. 
According to one of the clinics contacted by Spagnola, the Kuykendalls had been encouraged to
apply for Medicaid, but they never followed through with their application. The clinic also
reported to Spagnola that the main reason the physicians did not want to work with the family was
because the child was allowed to get into a crisis situation on so many occasions that they were
considered to be very dangerous.
      During the two years prior to trial, the Kuykendalls had about twenty-five different
residences. Donald Webb, the Kuykendalls' landlord on two separate occasions, testified that they
were evicted from one of the residences, were they had lived for two or three months, because
they were five or six weeks behind on the rent. According to Webb, they were not very clean
people. He testified that when they left the apartment:
It was filthy. There was all kinds of trash in the closet and there was maggots in
there. There was lots of stuff in the bathroom—female napkins—and they had to take all
of that out and sweep and clean the apartment out.

      Paula Brandon, a Child Protective Services' case worker with the Department of Human
Services testified that each time she visited any of the different places where they had lived:
there was clothes that was piled in various corners. Sometimes there would be left-over
food that was in the sink. A lot of times the children would not have on any type of
underwear and things like this; which was not a problem; but these are some of the things
that I had talked with Mrs. Kuykendall about. . . . So we would talk about the
cleanliness of the home. I also talked about the cleanliness of the home with Mr.
Kuykendall.

      Brandon also testified that there were times that she visited their home and found the children
wet because they were out of diapers. According to Brandon, even though she filed out a
Medicaid application for the Kuykendalls, they were denied Medicaid because they would miss
their appointments. Brandon also testified that, when the children were removed from the custody
of Gary Kuykendall, S.M.'s breathing machine, which was in Teresa Kuykendall's possession,
was "covered with some type form of gum or something on the top" and "the fan was not working
properly."
      Brandon testified that she did not believe the Kuykendalls had the ability to be good parents;
that the children had been in danger, physically and emotionally, by being in the Kuykendall
home; and that the Kuykendalls neglected their children with regard to their physical and
emotional needs.
      Janette Saen, a pediatric nurse at the Health Department clinic, testified that the Kuykendall
children were referred to the clinic by the hospital because they did not have prenatal care. Saen
also testified that both children came into the clinic poorly nourished on several occasions. 
According to Saen, the Kuykendalls missed numerous appointments and probably did not provide
appropriate medical care for their children.
      We hold that the trial court could reasonably have found the evidence clear and convincing
to establish that Teresa Kuykendall "knowingly placed or knowingly allowed the children to
remain in conditions or surroundings which endanger the physical or emotional well-being of the
children," or that she "engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangers the physical or emotional well-being of the children." 
Accordingly, we overrule points of error one and two.



      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 8, 1992
Do not publish